IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| SKYLAR GUNN, Individually, and on behalf of others similarly situated. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 1:13-cv-01035-JDB-egb ) |
| | ) JURY TRIAL DEMANDED |
| NPC INTERNATIONAL, INC. | ) ) |
| Defendant. | ) |

**Gunn's Response in Opposition to
NPC's Motion for Entry of Final Judgment**

NPC claims this action is moot[1] and that the Court lacks subject matter jurisdiction because Plaintiff Skylar Gunn accepted NPC's Offer of Judgment of $5,000 for her unpaid wages.[2] That is not the case for three key reasons:

1. Additional NPC employees filed written consents to join this suit as party-plaintiffs **before** Ms. Gunn accepted NPC's offer;

2. Allowing NPC to "pick off" a named plaintiff before the court has the opportunity to address whether to certify this matter as a collective action would frustrate the purposes of the FLSA; and

3. Ms. Gunn never attempted to settle the Opt-Ins' wage claims (neither did NPC's offer claim to cover their claims), but even if she had, an employee cannot waive her own FLSA wage claim, much less can she delegate that ability to someone else.

None of NPC's arguments in its motion or supporting memorandum address

---

[1] NPC also moved to dismiss or strike Plaintiff's Amended Complaint, which Ms. Gunn will address in a separate Notice of Withdrawal filed contemporaneously with this Response.

[2] (*See* Def.'s Mem. Dismiss, Doc. No. 26-1, at 1; Def.'s Motion to Dismiss, Doc. No. 26, at 1).

these matters. And few, if any, of the cases that NPC relies upon involve FLSA collective actions — ***especially*** where additional employees have filed written consents to join the suit. *See* 29 U.S.C. § 216(b). Instead, NPC has relied on ill-fitting contentions, such as the Sixth Circuit's statement in *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (an equal protection claim where the named plaintiff sought class certification under Rule 23) that "where . . . the named plaintiff's claim becomes moot *before* certification, dismissal of the action is required," to assert that this action is moot, that any employees who filed consents to join this suit are "bound" to Gunn's settlement, and that their claims should be *dismissed* — despite that neither NPC's offer nor Ms. Gunn's acceptance ever mentions opt-ins or compensates them in any way. (Def. Mem. at 6–7.) Not only does NPC's argument depend on cases that are by-and-large inapposite, it demonstrates a fundamental misunderstanding of wage and hour law.[3]

Accordingly, this Court should deny NPC's request for Final Judgment. In the event the Court finds that Ms. Gunn's acceptance of NPC's offer (which NPC filed with a motion strongly urging the Court to enter Judgment in Ms. Gunn's favor) settles the issue of NPC's liability to Ms. Gunn, it should also settle the issue of NPC's liability to anyone similarly situated to Ms. Gunn. Consequently, the Court should enter an Order establishing NPC's liability to Ms. Gunn *and* any

---

[3] Ms. Gunn's response under Heading Number 3 covers the point that claims for minimum wages, overtime, and liquidated damages under the FLSA ***cannot be waived***, nor can they be settled privately for less than what employees are owed. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945) ("We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.")

2

employees similarly situated to her — closing the issue of liability but continuing with the matters of certification and notice to similarly-situated individuals.

1. **Additional NPC employees filed consents to join this suit as *party-plaintiffs* before Ms. Gunn accepted NPC's offer.**

Underpinning NPC's argument that its offer to Ms. Gunn "moots" this action is Article III, Section 2 of the Constitution, which limits the jurisdiction of courts to actual "cases" or "controversies." *See* U.S. Const. art. III, § 2, cl. 1. This prudential restraint on subject matter jurisdiction has led several courts to find that a defendant's offer to pay a plaintiff's damages in full "eliminates a legal dispute upon which federal jurisdiction can be based," since it would be beyond a court's power to award more than the defendant was already willing to pay. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 574 (6th Cir. 2009) (quoting *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999)). NPC argues here that Ms. Gunn's acceptance of NPC's $5000 offer for her own unpaid wages has that effect on this case, i.e. that the Court cannot give Ms. Gunn more than what NPC has voluntarily offered her. In NPC's view, this deprives the Court of any "discretion to withhold its entry (of judgment) or (to) otherwise frustrate the agreement" and the court clerk must enter final judgment. (Def.'s Mem. at 6.)

But the mootness doctrine is not so clear-cut and inflexible. *See U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 401 (1980)(explaining that the "mootness doctrine" under Article III is flexible and "not a legal concept with a fixed content or susceptible of scientific verification.") For even if NPC's offer adequately compensates Ms. Gunn for her own wages, the mootness inquiry would not end

there. *See id.* ("[T]he fact that a named plaintiff's substantive claims are mooted due to an occurrence other than a judgment on the merits does not mean that all the other issues in the case are mooted.") To begin with, Ms. Gunn filed this as a "collective action" on behalf of herself and all others similarly situated, which "presents two separate issues for judicial resolution[:] One is the claim on the merits; the other is the claim that [s]he is entitled to represent a class." *Id.* at 402. But there are also exceptions to the mootness doctrine, such as the "relation back" doctrine, that courts often employ when mooting a claim would undermine certain policy considerations, such as those underpinning the FLSA's collective action mechanism. *See Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 919 (5th Cir. 2008) (applying the "relation back" doctrine to avoid incentivizing "employers to use Rule 68 as a sword, 'picking off' representative plaintiffs and avoiding ever having to face a collective action.")

The most compelling reason why NPC's offer does not moot this action is the language of the FLSA itself:

> No employee shall be a ***party plaintiff*** to any such action ***unless*** he gives his ***consent in writing*** to become such a party and such consent is filed in the court in which such action is brought.

*See* 29 U.S.C. § 216(b) (emphasis added). As many courts have recognized, this statutory language demonstrates that Congress intended for those who join an action via written consent to assume the status of "party plaintiff." For instance, the Sixth Circuit correctly observed in *O'Brien v. Ed Donnelly Enterprises* that " . . . opt-in employees ***are*** party plaintiffs, unlike absent class members in a Rule 23

4

class action." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009) (emphasis added). This also supplies a sound explanation for why it is next to impossible to find any cases where a court has mooted an FLSA collective action under NPC's theory ***after*** additional employees have filed consents to join an action. To be sure, none of the cases that NPC relies on has done so.

On the other hand, several courts have considered whether a defendant's offer of relief can moot a collective action before the court has the opportunity to address certification have done so ***in the absence*** of any opt-in employees:

> The issue we must resolve . . . is whether an FLSA collective action becomes moot when (1) the putative representative receives a Rule 68 offer in full satisfaction of her individual claim prior to moving for "conditional certification," and (2) ***no other potential plaintiff has opted in to the suit.***

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 197 (3d Cir. 2011) *cert. granted,* 133 S. Ct. 26 (2012) (emphasis added). The issue in *Symczyk* (quoted above) was argued before the Supreme Court on December 3, 2012, and a decision is expected any day. Because the Supreme Court is soon to rule on that particular question, the Sixth Circuit has chosen to stay its decision concerning an issue very similar to the one in *Symczyk*. *See Hrivnak v. NCO Portfolio Management, Inc.*, 723 F. Supp. 2d 1020 (N.D. Ohio 2010), *motion to certify appeal granted*, 2010 WL 5392709 (N.D. Ohio 2010). But unlike *Hrivnak*, four individuals in this case had already filed consents to join the suit *before* Ms. Gunn accepted NPC's offer.[4]

---

[4] This also means that the result in *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189 (3d Cir. 2011) will not likely bear directly upon this action.

Like named plaintiffs, these opt-in plaintiffs may maintain a cause of action on behalf of themselves and all "other employees similarly situated" per the plain language of Section 216(b). Employees who file consents to join this action *are* party-plaintiffs — no different than Ms. Gunn. *See* 29 U.S.C. § 216(b); *O'Brien*, 575 F.3d at 583; *see also Prickett v. DeKalb County,* 349 F.3d 1294, 1297 (11th Cir. 2003). The Eleventh Circuit reached this same conclusion in *Prickett v. DeKalb County,* 349 F.3d 1294, where it recognized that it was *Congress* who referred to individuals who file consents to join collective actions as "party plaintiffs" — leading the court in *Prickett* to soundly reason that Congress intended "opt-in plaintiffs [to] have the *same status* in relation to the claims of the lawsuit *as . . . the named plaintiffs*." *Id.* at 1297 (emphasis added). The Northern District of New York echoed this same sentiment when it concluded that the FLSA's "statutory language indicates that once a potential plaintiff opts in, that person is a party to the action." *Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 262 (N.D.N.Y. 2009). Similarly, Maine's District Court found it unnecessary to amend a complaint to add opt-ins in light of the FLSA's language equating opt-ins with named plaintiffs. *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 370 (D. Me. 2010).

Moreover, this reading of the statute comports with the Sixth Circuit's designation of "opt-in employees" as "party plaintiffs," which is different from how the Sixth Circuit views "absent class members in a Rule 23 class action, which do not enjoy the same status." *O'Brien*, 575 F.3d at 583. Accordingly, those who file consents to join this suit *are* "party-plaintiffs" under the statute's plain language,

6

fully capable of prosecuting their own FLSA wage claims along with those of any employees who are similarly situated. For these reasons, the Court should deny NPC's motion seeking final judgment and the dismissal of the Opt-Ins' claims.

   2. **Allowing NPC to "pick off" a named plaintiff before the court has addressed whether to certify this matter as a collective action would frustrate Congress's intent in passing Section 216(b).**

Allowing a defendant to obstruct FLSA claims from ever reaching certification as a collective action by "picking off" the claims of named plaintiffs with Rule 68 Offers of Judgment undermines the very purpose of 29 U.S.C. § 216(b).[5] *See Symczyk,* 656 F.3d at 200; *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 922 (5th Cir. 2008); *Prickett,* 349 F.3d at 1297; *see also Hrivnak*, 723 F. Supp. 2d at 1030–31; *Stewart v. Cheek & Zeehandelar, LLP,* 252 F.R.D. 384, 386 (S.D. Ohio 2008). The Third Circuit expertly made this point in *Symczyk v. Genesis HealthCare Corporation* — a case awaiting the imminent decision of the Supreme Court — where it deftly characterized using Rule 68 in the manner that NPC has attempted to use it here as "facilitat[ing] an outcome antithetical to the purposes behind § 216(b)." *Symczyk,* 656 F.3d at 200. This is so for several reasons.

For starters, courts have a significant interest ". . . in managing collective actions in an orderly fashion," as the Supreme Court recognized in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). *Hoffman-La Roche* emphasized

---

[5] *See also Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339 (1980) (rejecting as "contrary to sound judicial administration" a defendant's attempts to "'buy off' the individual private claims of the named plaintiffs" in a Rule 23 class action because allowing the named plaintiff's claims "to be 'picked off' by a defendant's tender of judgment . . . would frustrate the objectives of class actions" and waste "judicial resources by stimulating successive suits brought by others claiming aggrievement.")

7

that the early involvement of courts in facilitating notice to potential plaintiffs "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche*, 493 U.S. at 172; *see also Prickett,* 349 F.3d at 1297 ("Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits."). Plaintiffs also benefit from collective actions because of lower individual costs and the pooling of resources. *Hoffmann-La Roche*, 493 U.S. at 170. But these benefits mean nothing unless employees receive "accurate and timely notice concerning the pendency of the collective action." *Id.*

That is precisely why *Hoffman-La Roche* underscored the importance of the district court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170–71. Section 216(b) grants district courts "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* at 171. Thus, it is up to the district courts to ensure the orderly progress of collective actions to serve "[t]he broad remedial goal of the statute." *Id.* at 173. Although courts certainly have discretion in how to manage their docket, courts avoid "overrid[ing] Congress' policy choice." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (reasoning that courts cannot exercise discretion in a way that "override[s] Congress' policy choice.") In passing Section 216(b), Congress expressed a clear preference for employees to be given the "opportunity to proceed collectively." *Hoffman-La Roche,* 493 U.S. at 170.

Permitting defendants such as NPC to use offers of judgment as a tactic to keep courts from ever reaching the issue of certification thwarts these important policies. For example, if a Rule 68 offer to the named plaintiff could moot a collective action before the court can address the issue of certification, then "each side will endeavor to beat the other to the punch." *Hrivnak*, 723 F. Supp. 2d at 1030–31. This would undermine the district court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche,* 493 U.S. at 170–71. It would also "have the disastrous effect of enabling defendants to essentially opt-out of [collective actions]," since defendants will strive to hastily settle with named plaintiffs to avoid notice issuing to other potential plaintiffs. *Hrivnak*, 723 F. Supp. 2d at 1030.

This scenario would frustrate the very purpose of Section 216(b) by forcing "those who have been harmed . . . to file individual suits to obtain redress" and driving them "to hire their own lawyers." *Id.* Courts "will be forced to contend with multiple, largely identical lawsuits, thereby wasting judicial resources." *Id.* Instead of the organized process that the Court envisioned in *Hoffman-La Roche* — ensuring that potential plaintiffs receive notice and avoiding a multiplicity of lawsuits — plaintiffs would rush haphazardly to identify and notify potential plaintiffs on their own, depriving courts of the chance to effectively manage notice and the orderly progress of the suit. On the other hand, allowing these actions to move forward so that the court has the opportunity to consider the question of certification — notwithstanding any attempts to settle with named plaintiffs —

9

would safeguard the important principles that prompted Congress to enact the FLSA's collective action mechanism to begin with. *See Symczyk,* 656 F.3d at 200; *Sandoz,* 553 F.3d at 922; *Prickett,* 349 F.3d at 1297.

Additionally, the Supreme Court has devised mechanisms in the context of Rule 23 class actions, such as the "relation back" doctrine, for avoiding the harsh application of the mootness doctrine when "mooting" a claim would contravene important policy considerations, such as those described above. For example, in *Sosna v. Iowa,* 419 U.S. 393, the Supreme Court, in recognizing that a claim might be resolved before the court could address certification, held that the plaintiff's claim could be said to ". . . 'relate back' to the filing of the complaint" in the event that the court were to certify the class since "the issue might otherwise evade review." *Sosna v. Iowa,* 419 U.S. 393, 402 n.11 (1975); *see also U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 399 (1980) (preserving the court's jurisdiction to review certification when the plaintiff's claims were "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires"). Many courts have since applied the relation back doctrine in the collective action context to thwart defendants' attempts to misuse offers of judgments for the purpose of preventing or stalling the issue of class certification from reaching the court.

In *Sandoz v. Cingular Wireless LLC*, for example, the Fifth Circuit applied the relation back doctrine under circumstances very similar to those in this case. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 921 (5th Cir. 2008). Like NPC

here, the defendant in *Sandoz* "made its offer of judgment about a month after receiving Sandoz's complaint." *Id.* The Fifth Circuit was troubled that, if the trial court were to ultimately certify the matter as a collective action, "the Rule 68 offer to the individual plaintiff would not ***fully*** satisfy the claims of ***everyone*** in the collective action" — alluding to the fact that the plaintiff also sued on behalf of other employees who were similarly situated to him. *Id.* (emphasis added). In rejecting the defendant's contention that its offer to the named plaintiff mooted the collective action, the Fifth Circuit relied on the relation back doctrine, wisely reasoning that ". . . there must be some time for a plaintiff to move to certify a collective action before a defendant can moot the claim through an offer of judgment." *Id.*

Other courts have applied the relation back doctrine in collective actions for similar reasons. *See Symczyk*, 656 F.3d at 200. For instance, the Third Circuit in *Symczyk* reasoned that so long as "the certification process has yet to unfold, application of the relation back doctrine prevents defendants from using Rule 68 to 'undercut the viability'" of a collective action:

> The relation back doctrine helps ensure the use of Rule 68 does not prevent a collective action from playing out according to the directives of § 216(b) and the procedures authorized by the Supreme Court in *Hoffmann–La Roche* and further refined by courts applying this statute. Depriving the parties and the court of a reasonable opportunity to deliberate on the merits of collective action "conditional certification" frustrates the objectives served by § 216(b).

*Id.* at 200–01. Echoing a different point from *Hoffman-La Roche*, the Ninth Circuit

11

has reasoned that "the relation back doctrine . . . avoids the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011).

The relation back doctrine also "helps safeguard against the erosion of FLSA claims by operation of the Act's statute of limitations." *Symczyk*, 656 F.3d at 200. For opt-ins, an action does not commence until each files a written consent. *See* 29 U.S.C. § 256(b). This incentivizes employers to delay the filing of consents as long as possible — and the most effective way to accomplish that is to make sure the court never issues notice. Allowing Rule 68 offers to "pick off" named plaintiffs means employers can delay notice "depriv[ing] potential opt-ins whose claims are in jeopardy of expiring of the opportunity to toll the limitations period — and preserve their entitlements to recovery — by filing consents within the prescribed window." *Symczyk*, 656 F.3d at 200.

Because of these concerns, at least two district courts in the Sixth Circuit have reasoned that defendants should not be able to moot a collective action with Rule 68 Offers so long as the plaintiffs have not been dilatory in moving for certification. *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 1:10-CV-646, 2010 WL 5392709 (N.D. Ohio Dec. 22, 2010). This is consistent with the views of many courts to have considered the issue both in the context of a Rule 23 class and under the FLSA. *See, e.g., Weiss v. Regal Collections,* 385 F.3d 337, 348 (3d Cir. 2004); *Harris v. Messerli & Kramer, P.A.*, 2008 WL 508923 at *2–3 (D. Minn. Jan. 2, 2008); *Jenkins*

*v. General Collection Co.,* 246 F.R.D. 600, 603 (D. Neb. 2007); *Schaake v. Risk Mgmt. Alternatives, Inc.,* 203 F.R.D. 108, 111 (S.D.N.Y. 2001).

The case here is barely two months old. If there has been any delay at all, it has been by NPC, which requested an additional 30 days to respond to the Complaint, then used the time to send Rule 68 offers in its own effort to "pick off" the named plaintiffs. This has somewhat stymied the Court's usual procedure of setting a Rule 26(f) Conference upon the filing of a responsive pleading, followed thereafter by a scheduling order setting forth a fair schedule for moving forward. This (at least in part) illustrates the problem the *Symczyk* court discussed where it lamented that tactics such as trying to settle with named plaintiffs to delay (or otherwise prevent) a court from issuing notice "deprive[s] potential opt-ins whose claims are in jeopardy of expiring of the opportunity to toll the limitations period — and preserve their entitlements to recovery — by filing consents within the prescribed window." *Symczyk*, 656 F.3d at 200. The Court should stop these — in NPC's words — *shenanigans*[6] and enter an order establishing NPC's liability to Ms. Gunn and those similarly situated to her, followed by a Rule 26(f) conference to move forward and preserve the claims of those who have yet to receive notice.

3. **Ms. Gunn never attempted to settle the Opt-Ins' wage claims (neither did NPC's offer claim to cover their claims), but even if she had, an employee cannot waive her own FLSA wage claim, much less can she delegate that ability to someone else.**

NPC argues that the Court should "dismiss" the claims of those who have

---

[6] (*See* Def. Mem., Doc. No. 26-1, at 10)("These shenanigans should not be countenanced")(denigrating Plaintiffs' desire to move forward with this case despite that, from the outset, this suit was filed as a collective action on behalf of Ms. Gunn and "all employees similarly situated" to her.)

13

filed consents to join this suit under the theory that, as the Representative Plaintiff, Ms. Gunn was the Opt-Ins' agent and that "[e]ach of them agreed 'to be bound to any judgment by the Court or any settlement of this action." (Def.'s Mem. in Supp. Dismiss., Doc. No. 26-1, at 5.) According to NPC, the Consent Form designated Ms. Gunn as the Opt-Ins' "'agent to make decisions on their behalf concerning the litigation' including 'when and under what terms to settle this action upon.'" (*Id.*)

But this argument completely overlooks the fact that **nowhere** in Ms. Gunn's Notice of Acceptance does she purport to settle anyone's claims but her own. (*See* Gunn Acceptance, Doc. 18-2.) Not only that, NPC's Offer of Judgment proposes to pay Ms. Gunn and **only** Ms. Gunn compensation for unpaid wages. (*See* Gunn Offer, Doc. 18-1.) Ms. Gunn's acceptance specifically agrees to accept NPC's Offer of Judgment "for payment **to Skylar Gunn** of Five Thousand Dollars . . . ." (Gunn Acceptance, Doc. 18-2)(emphasis added). So even if the Opt-Ins *could* have clothed Ms. Gunn with authority to act as their agent for settlement purposes, nowhere is there evidence that she ever exercised — or intended to exercise — that authority.

Ultimately, that's beside the point: Even if the Opt-Ins tried to delegate authority to settle their claims for *nothing*, employees cannot waive "statutory wages by agreement" because allowing so "would nullify the purposes of the Act." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945) ("[T]he same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages."). Congress intended for the FLSA to balance the "unequal bargaining power" between employer

and employee, which had unfortunately persuaded many to accept inferior wages just to secure a job. *See id.* at 706. The FLSA was intended as "federal compulsory legislation to prevent [these] private contracts" for shoddy wages. *Id.* at 707. As a result, employees lack the power to settle wage claims for less than what they are owed — especially when the settlement, in effect, **waives** those claims. *Id.*

NPC argues that applying "general contract principles" to NPC's offer, Ms. Gunn's acceptance, and the Opt-Ins' consent forms shows that the Opt-Ins delegated the right to settle their claims to Ms. Gunn — while also urging the Court to avoid any "strained constructions" of the contract. (Def. Mem. at 7.) Ironically, there could hardly be a more "strained construction" of Ms. Gunn's acceptance than to suggest she *intended* to settle the Opt-Ins' claims for *nothing* — or suggesting that NPC *intended* its original offer for "[p]ayment to Skylar Gunn of a total of $5,000" to apply to the Opt-Ins. And yet despite that neither NPC's offer nor Ms. Gunn's acceptance even refer to the opt-ins, NPC nevertheless claims that the "natural and ordinary meaning" of this "contract" binds the Opt-Ins and their claims "are moot" since they assigned the right to settle to Ms. Gunn. (*Id.* at 2, 7.)

Notwithstanding this ridiculous contention, there are few concepts more fundamental to contract law than the one making clear that a party cannot assign by contract that which she herself does **not** possess — *i.e.* the power to waive an FLSA claim for unpaid wages and liquidated damages. *See Binswanger S. (N.C.), Inc. v. Textron, Inc.,* 860 S.W.2d 862, 865 (Tenn. Ct. App. 1993) (reasoning that an assignee's right "is entirely derivative from and dependent upon the rights of its

15

assignor"); *Brooklyn Savings,* 324 U.S. at 707. And since individual employees cannot waive FLSA claims, then, *a fortiori*, neither can they delegate that right. *See Binswanger,* 860 S.W.2d at 865. So even if it had been Ms. Lewis, Ms. Penley, Ms. Redmond, and Ms. Yelverton's intent to appoint Ms. Gunn as their representative to settle their FLSA claims, Congress long ago struck from that power the ability to settle wage claims for *nothing*. *See Brooklyn Savings*, 324 U.S. at 706–07. This is bolstered by the fact that there is no reference whatsoever in NPC's offer, in Ms. Gunn's acceptance, or in any of the Opt-Ins' Consent Forms that they intended NPC's offer to Ms. Gunn (for her own unpaid wages) to somehow affect a waiver — long ago made *impermissible* by law — of the Opt-Ins' wage claims. *See id.*

Accordingly, if the Court were to enter judgment in favor of Ms. Gunn, the proper action with respect to the Opt-Ins' claims is not to *moot* them as NPC argues, but the converse: Entering a judgment establishing NPC's liability to Ms. Gunn ***and*** all employees who are similarly situated to her. The Sixth Circuit touched briefly on a similar point in *O'Brien* (under admittedly different circumstances) when it disagreed "that a plaintiff loses outright when he refuses an offer of judgment that would satisfy his entire demand." *O'Brien*, 575 F.3d at 575 (citing *Greisz,* 176 F.3d at 1015). Instead, the *O'Brien* court suggested that "the better approach is to enter judgment *in favor* of the plaintiffs in accordance with the defendants' Rule 68 offer of judgment" *Id.* Similarly, the Seventh Circuit reasoned in *Chathas v. Local 134*, 233 F.3d 508, 512–13 (7th Cir. 2000), that once a defendant has "thrown in the towel" there is "nothing left for the district court to do except

enter judgment" on behalf of the plaintiffs in accordance with the defendant's "consent to its entry." *Id.*

NPC's Offer of Judgment demonstrates that it does ***not*** contest liability as to Ms. Gunn. But Ms. Gunn has maintained from the outset that she sued on behalf of herself and all employees similarly situated to her, so NPC's offer should be construed establish liability not only to Ms. Gunn but to ***anyone similarly situated to her*** — especially given that NPC argues that the Court should "moot" (and thereby ***waive***) the Opt-Ins' claims for unpaid wages on the theory that Ms. Gunn was acting ***on their behalf***. NPC's feigned indignation that Ms. Gunn would amend her Complaint to add additional plaintiffs — which Ms. Gunn acknowledges was unnecessary in light of the statutory language indicating that opt-ins ***are*** party-plaintiffs — is amusing since Ms. Gunn has maintained all along that this is a collective action filed on behalf of all similarly situated employees. It is NPC that has attempted to take advantage of the system and thereby undermine the Court's managerial responsibility to guide this collective action through the certification and notification process, which would do nothing but cause a multiplicity of suits as the Supreme Court astutely foresaw in *Hoffmann-La Roche*, 493 U.S. at 170–72.

While NPC claims it "was unable to revoke" its Rule 68 Offer,[7] NPC could have responded to Ms. Gunn's acceptance in a number of ways: it could have lodged an objection with the Court and sought clarification since it claims it was unaware

---

[7] *But see Cesar v. Rubie's Costume Co.*, 219 F.R.D. 257 (D.C.N.Y. 2004)(finding that a defendant could revoke its offer of judgment where it contained a clerical error since Rule 68 should not apply so as to cause inequitable circumstances and that offers are revocable where contract law would permit the offer to be revoked.)

17

of the Opt-Ins when it offered to settle with Ms. Gunn; it could have amended its offer to include the Opt-Ins' claims;[8] it could have withdrawn its offer arguing that the Opt-Ins' addition constitutes a material change in the circumstances under which the offer was made. But NPC did none of these. Instead, NPC filed Ms. Gunn's acceptance nine days ***after*** the Opt-Ins joined the suit, followed by a motion urging the Court to enter judgment decreeing its liability to Ms. Gunn.

Because this action has never purported to be anything other than an FLSA collective action, NPC should be estopped — or, once the Court enters Judgment, *precluded* — from denying liability to any individuals similarly situated to Ms. Gunn. NPC's offer to accept a judgment establishing its liability to Ms. Gunn should entitle anyone similarly situated to Ms. Gunn to rely upon that judgment with respect to NPC's liability. Defense counsel for Genesis Healthcare in the *Symczyk* case admitted as much before the Supreme Court in December:

> COUNSEL: Because it was an offer of judgment, if the offer had been accepted, ***the result would have been a judgment by the Federal court imposing liability*** under the statute, under the Fair Labor Standards Act, on the Defendant, and requiring the Defendant to pay full and complete relief, including costs and attorneys' fees, to the Plaintiffs. So there would have been a judgment of the Federal court imposing liability under the statute**.**
>
> JUSTICE GINSBURG: So if — if there were judgment of liability, then that would be ***preclusive for all other***

---

[8] *See, e.g., Radecki v. Amoco Oil Co.*, 858 F.2d 397 (8th Cir. 1988)(finding that a defendant could clarify its earlier Rule 68 offer with an amended offer which would preclude the plaintiff from accepting the defendant's first offer); *Fisher v. Stolaruk Corp.*, 110 F.R.D. 74 (D.C. Mich. 1986)(finding that equity would allow a defendant to rescind its Rule 68 offer when the defendant's attorney wrote plaintiff's counsel to explain that its offer should have explicitly included attorney's fees and the plaintiff later attempted to accept the offer and argue that the court could award fees in addition to the offer).

18

> *people similarly situated*?
> ***
> So the next case is another employee who claims uncompensated work time, and that's brought on behalf of similarly situated people. Then that next case, the employer would be — would be subject to summary judgment because the liability has been established.
>
> COUNSEL: Well, there would be a variety of fact questions that would have to be resolved to determine the extent of the preclusion from the first judgment. ***But the rules of issue and claim preclusion would apply*** . . . . And this would have been a judgment imposing liability under the Fair Labor Standards Act***, based on the allegations made in the complaint***.

Tr. of Oral Argument at 3:23–4:7, *Symczyk,* No. 11-1059 (U.S. Dec. 3, 2012), *http://www.supremecourt.gov/oral_arguments/argument_transcripts/11-1059.pdf* (emphasis added). In this case, the "allegations in the complaint" made clear from the outset that this was a collective action brought on behalf of similarly situated employees, and NPC was well aware of that when it attempted to settle with the *Representative* Plaintiff, Ms. Gunn. *See id.* And *res judicata* precludes the relitigation of any issues — including "***any possible defense***" — that are "ended by a judgment of the court." *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1284–85 (Fed. Cir. 2009)(emphasis added). This applies regardless of whether the judgment is imposed "upon the consent of the parties." *Id.* at 1285. In NPC's own words, "There is no need for the ***plaintiff*s** to continue litigating since ***they*** have ***already won***." (NPC's Mem. at 9)(emphasis added).

It is on this singular point that the Parties agree: The Court *should* enter judgment establishing NPC's liability to Ms. Gunn. But once the Court does so,

19

those employees similarly situated to Ms. Gunn should be entitled to rely upon that judgment as preclusive on the issue of NPC's liability, leaving only the question of damages. Accordingly, the Court should move to establish deadlines for taking up the issue of certification and notice to any potential plaintiffs in accordance with *Hoffman-La Roche*, preserving the question of damages until all of the potential plaintiffs are properly before the Court. *See Hoffmann-La Roche*, 493 U.S. at 170–171.

          Respectfully Submitted,

          s/ Timothy A. Perkins
          Gordon E. Jackson(8323)
          James L. Holt, Jr. (#12123)
          Timothy A. Perkins (#24657)
          JACKSON, SHIELDS, YEISER & HOLT
          262 German Oak Drive
          Memphis, Tennessee  38018
          Tel:   (901) 754-8001
          Fax:  (901) 759-1745
          ATTORNEYS FOR PLAINTIFF
          *gjackson@jsyc.com*
          *jholt@jsyc.com*
          *tperkins@jsyc.com*

**Certificate of Service**

The undersigned hereby declares that on this, the 15th day of April, 2013, a true and accurate electronic copy of this document was delivered to the following via the Court's ECF system:

**Thomas L. Henderson**
**Russell W. Jackson**
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
**6410 Poplar Avenue, Suite 300**
**Memphis, TN 38119**

          s/  Timothy A. Perkins